**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DEMARRLOH KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-95-TS |
| | ) | |
| OFFICER COREY THOMAS #1713, | ) | |
| OFFICER ANGELA REED #1564, | ) | |
| and the CITY OF FORT WAYNE, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiff, Demarrloh Knight, contends that he was subjected to excessive force when Fort Wayne Police Department Officer Corey Thomas hit him over the head with a flashlight and Officer Angela Reed did not intervene. The Plaintiff alleges that the City is responsible under state law because it employed tortfeasors and under federal law because a policy or custom of the City caused the deprivation of his Fourth Amendment rights. The Defendants have moved for summary judgment on all the Plaintiff's claims.

## BACKGROUND

The Plaintiff initiated this lawsuit on March 27, 2006. He sued the individual officers pursuant to 42 U.S.C. § 1983. On July 24, 2006, the Plaintiff amended his complaint to add a § 1983 official policy claim and a state law *respondeat superior* claim against the City of Fort Wayne. On August 11, 2006, the Defendants answered the Amended Complaint.

On April 23, 2007, the Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Pointing to the outcome of state court juvenile proceedings, the

Defendants argue that the Plaintiff's excessive force claims is barred by collateral estoppel and the application of *Heck v. Humphrey,* 512 U.S. 477 (1994). The Defendant officers also claim that the amount of force used was reasonable as a matter of law, and that they are entitled to qualified immunity. The City submits that summary judgment is appropriate in its favor because there is no evidence that the challenged conduct of the officers was undertaken pursuant to a policy or practice of the Fort Wayne Police Department. Finally, the Defendants argue that statutory immunity applies to the supplemental state law battery claim.

On May 23, the Plaintiff responded. He argues that his claims for excessive force are not barred by the state court juvenile proceedings. Additionally, he presents a differing version of the facts to support his argument that a jury could conclude that the officers used excessive force. As part of his claim that the force used was excessive, the Plaintiff argues that the officers did not have probable cause or reasonable suspicion to stop him and thus, committed an independent Fourth Amendment violation that led to the unjustified use of force. The Plaintiff does not mention the state law claim or the claims against the City, either to expressly waive them or to present argument in opposition to summary judgment.

On June 7, the Defendants replied, arguing that the Plaintiff did not point to a closely analogous case that would overcome their claim of qualified immunity. The Defendants also argue that the Plaintiff's vague recitation of the facts cannot create a material dispute. The Defendants submit that the Plaintiff cannot claim that the officers were without justification to stop him because that matter was fully adjudicated in juvenile court upon his motion to suppress the marijuana that was introduced as evidence against him in those proceedings. The Defendants note that the Plaintiff failed to respond to their arguments regarding the state law claim and the

claims against the City.

On June 13, the Plaintiff filed a sur-reply to address the matter of a closely analogous case. The Defendants replied to this argument on June 20, again noting that the Plaintiff's testimony about the events of his arrest were vague, and arguing that he could not contradict the officers' testimony, particularly regarding Officer Thomas's intention to strike him in the leg instead of the side of the head.

On September 4, the Plaintiff submitted supplemental authority in support of his argument that the officers "did not have probable cause to stop and frisk [the Plaintiff], and certainly did not have authority to seize [him] for either 'backing up' or attempting to walk away." (DE 43 at 1.) The Plaintiff cites six cases and provides a brief synopsis of their holdings. On September 11, the Defendants moved to strike the Plaintiff's submission of supplemental authority, or in the alternative, to file a sur-reply. The Defendants argue that the parties had sufficient opportunity to brief the issues in the case, that none of the cases constitute new authority, and that the Plaintiff's characterization of the holdings is not accurate. The Defendants urge the Court to strike the supplemental filing, or, in the alternative, to allow them an opportunity to respond. On September 17, the Plaintiff responded to the motion to strike. He states that leave to file supplemental authority was not necessary, and that his characterization of the holdings of the cases is accurate. He does not oppose further briefing by the Defendants to address the supplemental authority.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000). However, "[i]nferences that are supported by only speculation or

4

conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371

F.3d 992, 1001 (7th Cir. 2004). The court must consider the evidence as a jury might,

"construing the record in the light most favorable to the nonmovant and avoiding the temptation

to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*,

168 F.3d 998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)

(noting often stated proposition that "summary judgment cannot be used to resolve swearing

contests between litigants"). The court may not grant summary judgment "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party

and supported by admissible evidence are admitted to exist without controversy, except to the

extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the

motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).


## STATEMENT OF FACTS

It is common in excessive force cases for the parties to come away with differing factual

recollections of the incident. When this occurs, as it has in this case, the Court must determine

which facts are supported by the designated evidence and which differences, if any, are material.


**A.      Confrontation Between the Plaintiff and the Defendant Officers**

During the early morning hours of April 10, 2005, the Plaintiff was walking with a friend

on Drexel Avenue, near Oliver Street, in Fort Wayne, Indiana. During this same time, Officers

Thomas and Reed responded to a dispatch call about a disturbance near the intersection of Drexel and Oliver. As they were driving their marked police car, they saw the Plaintiff and his friend about one block away from the reported disturbance. The officers stopped their squad car and got out. Officer Thomas was carrying a flashlight. As they walked toward the two young men, the officers began to ask them questions about the disturbance, and also asked for identifying information. The officers told the two men to remove their hands from their pockets. According to the Plaintiff, he complied with the officers' orders and had his hands in the air as they approached him. The Defendants assert that the Plaintiff continued to put his hands in his pockets and had to be asked several times to keep his hands out of his pockets.

As the officers approached the young men, the officers asked if they had any weapons on them. Officer Thomas approached the Plaintiff as Officer Reed concentrated her attention on his friend. The officers present the following version of the events that followed: For officer safety, Officer Thomas conducted a pat down of the Plaintiff, in part, because he repeatedly put his hands in his pockets despite orders to keep them up. As he was doing so, he heard a rustling noise like a plastic bag would make, and the Plaintiff exclaim "oh no" as he slapped Officer Thomas's hand away from his pocket. Officer Thomas then grabbed the Plaintiff's pocket with one hand and held his flashlight with the other. The Plaintiff attempted to break free from Officer Thomas and started to slap and hit at Officer Thomas's arm. Officer Thomas ordered the Plaintiff to stop and get on the ground, but the Plaintiff did not comply. Officer Thomas then used his flashlight to administer a stun strike to the Plaintiff's common peroneal area, which is on the side of the Plaintiff's leg about midpoint between the knee and hip. The Plaintiff continued to struggle, trying to get away and striking Officer Thomas in the shoulder area, chin, and chest.

6

Officer Reed then grabbed the Plaintiff in the back of the neck to take him to the ground. At the same time, Officer Thomas tried to administer another strike to the Plaintiff's thigh. However, because Officer Reed was in the act of pulling the Plaintiff to the ground and the Plaintiff was still trying to get away, he did not hit his intended target, but hit the Plaintiff in the side of the head as he spun directly into the path of the strike.

When the Plaintiff was on the ground, Officer Reed returned to handcuff the other young man. Even as Officer Thomas pinned the Plaintiff on the ground, he continued to push up with his left hand. Officer Thomas ordered the Plaintiff to put his hands behind his back to be handcuffed. Officer Reed saw the Plaintiff pull his right arm from under him and throw a clear plastic bag. When Officer Thomas was able to control both the Plaintiff's hands, Officer Reed stepped over and handcuffed the Plaintiff. She also picked up the bag that the Plaintiff tossed. The contents of the bag were later tested and determined to be marijuana.

The Plaintiff's version of what transpired on April 10, 2005, differs from that presented by the Defendant Officers. The Plaintiff agrees that the officers asked whether they had anything, such as a weapon, on them. But then Officer Thomas began to go through his pockets, without first performing any kind of pat down. The Plaintiff started to back away, taking one or two steps, and said that he did not think that was the way the officer was supposed to check him. In response, Officer Thomas grabbed the Plaintiff and became forceful. The Plaintiff does not remember what happened next or how he ended up on the ground. He provided the following deposition testimony:

> Q.   So, he grabbed you, then what did—what happened then?
> A.   From there he was just being very forceful with me, and I — it — I don't, it was kind — I don't know, it kind of went kind of fast from there. I can't really say.

7

Q.      Okay. All right.

Q.      Did he ever say anything to you along the lines of "stand still," or "quit moving," or "get down"?

A.      I don't know.

Q.      You don't know? Okay.

Q.      Did you stop moving after he grabbed you? I note that you're pausing for a while, are you having difficulty remembering the incident?

A.      Yes, may—because it kind of—well, it kind of—it was kind of a quick chain of events there, and up until I ended up on the ground, I can't remember, like it was—it went real fast.

(Pl. Dep. at 74–76.) When asked again whether he remembered what happened after Officer Thomas grabbed him until he was on the ground, the Plaintiff stated that he did not remember. (Pl. Dep. at 76.) When asked whether it was possible that an officer told him to get down on the ground, the Plaintiff admitted that it was possible. (Pl. Dep. at 122.) When asked whether he tried to run away from the officers, the Plaintiff answered: "Not until we became—well, not—no, not—not that I tried to run. I just was trying to get a—him from my personal space. I had never planned on fleeing." (Pl. Dep. at 117.) Regarding whether he struggled or resisted the officers, the Plaintiff testified that he "wouldn't call it resisting, as much as more or less protecting myself." (Pl. Dep. at 122.)

The Plaintiff thought that he got hit in the head, because he felt the force of it, but did not realize it broke his skin until he was on the ground and saw blood. (Pl. Dep. at 76–77.) When he saw the blood, he was "just kind of like in shock about it" and kept saying that he was bleeding. (Pl. Dep. at 81.) Officer Thomas was on his back trying to handcuff him, and the Plaintiff could not see because there was blood in his eye.

The Plaintiff believes there were other superficial hits to his body.

Q.      Do you know whether you were hit more than once?

A.      I had—as I—I was—I remember I was trying to pull away, and I don't know how to—I mean, they weren't—they were—they were all

8

superficial at that—well, I think so, at least I think they were, I mean, over
like on my—of my left side.

(Pl. Dep. at 77.) He did not recall being struck on the leg. The Plaintiff does not believe that he

did anything to warrant being hit on the head. (Pl. Dep. at 119) ("Q. In your opinion, did you do

anything to justify being hit on the head with whatever hard object you were hit on the head

with? A. No.")

**B.     The Plaintiff's Injury**

After the officers realized that the Plaintiff was injured, they called an ambulance to take

him to the hospital. The Plaintiff was taken to St. Joseph Hospital and received staples for his

head wound. Because he was only seventeen, the Plaintiff was then taken to the juvenile center.

**C.     Juvenile Proceedings**

The Plaintiff was charged with possession of marijuana and with resisting law

enforcement. A fact finding hearing was held in Allen Superior Court on March 27, 2005, on the

charges brought against the Plaintiff. The Plaintiff's attorney moved to suppress evidence of the

marijuana. The hearing officer denied the motion to suppress and, ultimately, found the Plaintiff

guilty of possession of marijuana. The hearing officer also found, by a standard of proof beyond

a reasonable doubt, that the Plaintiff committed the delinquent act of resisting law enforcement

in violation of Indiana Code § 35-44-3-3.

**DISCUSSION**

**A.     Collateral Estoppel**

9

The Defendants argue that the Plaintiff's excessive force claim is barred by the juvenile court's finding that he resisted arrest. They submit that even if litigation of his excessive force claim is not barred, he is collaterally estopped from claiming that he did not resist law enforcement, and the Court must accept as true that he forcibly and violently resisted the Defendant officers. The Defendants also invoke collateral estoppel as a bar to the Plaintiff's claim that the officers did not have justification to stop and frisk him.[1] They note that the matter was litigated and decided during a suppression hearing upon the Plaintiff's motion to suppress evidence of the marijuana, and upon the adjudication of delinquency for possession of marijuana because it was necessarily required that the marijuana be admitted into evidence.

In response to the Defendants' collateral estoppel argument, the Plaintiff submits that the issue of Officer Thomas's force was never litigated in the juvenile proceedings. The Plaintiff does not address the Defendants' argument that he cannot challenge the legality of the stop. However, the Court presumes that his position is that the suppression hearing does not bar his argument that the stop was unlawful because he submitted supplemental authorities "in support of his arguments that Officers C. Thomas and Reed did not have probable cause to stop and frisk [the Plaintiff], and certainly did not have authority to seize [him] for either 'backing up' or attempting to walk away." (DE 43 at 1.)

Federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state judicial proceeding. *Haring v. Prosise*, 426 U.S. 306, 314 (1983); *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir. 1984); 28 U.S.C. § 1738. In

---

[1] The Plaintiff does not challenge the stop and frisk as a separate constitutional claim in this § 1983 suit. Rather, the Plaintiff argues that the unlawful stop was provocation for what may have been otherwise defensive police action. (DE 34 at 4) (arguing that because the officers had no probable cause or reasonable suspicion to stop, detain, and pat-down the Plaintiff, "[Officer] Thomas provoked the incident").

10

Indiana, "collateral estoppel operates to bar a subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Tofany v. NBS Imaging Sys., Inc*., 616 N.E.2d 1034, 1037 (Ind. 1993) "In that situation, the first adjudication will be held conclusive even if the second is on a different claim." *Id.* To determine whether the use of collateral estoppel is appropriate, a court is to consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Sullivan v. Am. Cas. of Reading, Pa.*, 605 N.E.2d 134, 138–39 (Ind. 1992) (adopting modern rule for defensive use of collateral estoppel). Collateral estoppel is an affirmative defense, so the burden of establishing each of these elements lies with the Defendants. *See Freeman United Coal Min. Co. v. Office of Workers' Comp. Program*, 20 F.3d 289, 294 (7th Cir. 1994).

**1.** *Excessive Force Claim*

The Plaintiff is correct that his delinquency determination for resisting arrest does not bar his excessive force claim against Officer Thomas. The juvenile court did not litigate whether Officer Thomas's strike to the Plaintiff's head constituted excessive force, and a finding on the issue was not necessary to the state court's decision. The state court specifically limited its finding of resistance to the period of time *before* Officer Thomas hit the Plaintiff on the head. (DE 38-3, Transcript at 116) ("And I believe that the State met its burden of forcible resisting prior to the second and very unfortunate—which I believe both officers felt was an unfortunate blow— that may shake itself out somewhere else.") The court found that the Plaintiff's action in

slapping Officer Thomas's hand away from his pocket constituted forcible resistance under the statute. (DE 38-3, Transcript at 117.) Therefore, the act that is alleged to constitute excessive force—the blow to the Plaintiff's head with a flashlight—occurred after the events that formed the basis of the resisting law enforcement conviction—slapping the officer's hand away.

Because the state court's finding did not actually and necessarily entail the rejection of the Plaintiff's claims that Officer Thomas applied excessive force when he hit him with a flashlight, and that Officer Reed is liable as a bystander to the event, collateral estoppel does not bar the Plaintiff's excessive force claim.

### 2.      *Lawfulness of Stop and Search*

The Plaintiff argues that the officers did not have any reason to stop and frisk him and that this was an independent Fourth Amendment violation that led to, or provoked, the use of excessive force. Although the Plaintiff is not asserting an independent search and seizure claim, he argues that the unlawfulness of the stop caused the Plaintiff to react by stepping away from the officers, which created the officer's perceived need to apply force. In this way, the Plaintiff challenges the sufficiency of the evidence to stop him. But this issue has already been decided by the state juvenile court, and the Plaintiff is barred from relitigating it in this civil suit.

The Defendants assert that the Plaintiff had a full and fair opportunity to litigate the lawfulness of the officer's stop during a suppression hearing. Indiana code provides that "[i]f a child is alleged to be a delinquent child, the procedures governing criminal trials apply in all matters not covered by the juvenile law." Ind. Code § 31-32-1-1. The juvenile code provides for representation by counsel, the cross-examination of witnesses, obtaining witnesses or tangible

evidence by compulsory process, and introduction of evidence. *See* Ind. Code §§ 31-32-2-1; 31-32-2-2; 31-32-4-1. The Plaintiff does not dispute that he was afforded these protections, which included the appointment of a public defender and a hearing on his motion to suppress. The Plaintiff was appointed a public defender for the juvenile proceedings. The full and fair opportunity to litigate element of collateral estoppel has been satisfied.

In addition, the lawfulness of the officer's stop was necessarily adjudicated in the juvenile hearing. To uphold the investigatory stop, the court had to conclude that the officers had reasonable suspicion supported by articulable facts that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (standard for investigatory stop). This finding forecloses the Plaintiff's claim that the officers acted illegally when they stopped him. *See, e.g., Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984) (holding that state court determination made after a preliminary probable cause hearing barred the plaintiff's subsequent Fourth Amendment false arrest claim). The court's denial of the Plaintiff's motion to suppress actually and necessarily entailed the rejection of his claim that the police were not justified in detaining him. Thus, the ruling on the motion to suppress bars the Plaintiff from relitigating whether the officers' initial stop was lawful.[2]

However, it is not clear whether the juvenile court determined, in response to the motion to suppress, that Officer Thomas's search of the Plaintiff was, likewise, lawful. The marijuana that was presented as evidence against the Plaintiff was not found during the search. Officer Reed stated that she saw the Plaintiff throw the baggie after he was on the ground, and that she

---

[2] Because the Plaintiff's submission of supplemental authority concerns the lawfulness of the officers' stop, which cannot be relitigated in this suit, the Defendants' motion to strike this supplemental authority is rendered moot.

13

picked it up. Thus, the state did not necessarily need to rely on the search of the Plaintiff to introduce the marijuana into evidence.

But the Plaintiff's challenge to Officer Thomas's search could still be barred by another of the state court's ruling—that involving the charge of resisting law enforcement. Indiana Code § 35-44-3-3(a) makes it a class A misdemeanor for a person to knowingly or intentionally forcibly resist, obstruct, or interfere with a law enforcement officer "while the officer is lawfully engaged in the execution of the officer's duties."

Thus, in order to be convicted of resisting law enforcement under Indiana Code § 35-44-3-3, the court necessarily had to find that Plaintiff used some level of force, and that Officer Thomas was lawfully engaged in his duties.[3] The Plaintiff's counsel recognized this during his closing argument to the court. Commenting on the fact that the officers had to be lawfully engaged in the execution of their duties, he argued that just because the Plaintiff did not prevail on the motion to suppress did not mean that the state established, under the beyond a reasonable doubt standard, that the officers were lawfully engaged in their duties. (DE 38-3, Hearing Tr. at 109.) The court disagreed, finding that the Plaintiff "did knowingly or intentionally forcibly resist, obstruct or interfere with law enforcement officers . . . while they were engaged in their lawful duties as law enforcement officers," and proceeding to outline the facts that justified the investigatory stop. (DE 38-3, Transcript at 115–16.) The court stated that it did not believe the Plaintiff's version of events, and it rejected the Plaintiff's position that his resistance was justified by unreasonable police conduct. (DE 38-3, Transcript at 116).

In Indiana, an individual does not have prerogative to resist an arrest that he believes

---

[3] For ease of reference, the Court refers to the delinquency adjudication as a conviction.

lacks sufficient probable cause or is otherwise unlawful. *See Dora v. State*, 783 N.E.2d 322, 327 (Ind. Ct. App. 2003) (relying on the general rule announced in *Fields v. State*, 382 N.E.2d 972, 976 (Ind. Ct. App. 1978), that an individual may not forcefully resist an officer's attempt to arrest him even if that arrest is unlawful). And while this general rule does not apply to all police misconduct, the cases finding the rule inapplicable are distinguishable from this case. *See Shoultz v. State*, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000) (holding that an officer who is applying unconstitutional excessive force is not "lawfully engaged in the execution of his duties," as required by Indiana Code § 35-44-3-3(a)); *Adkisson v. State*, 728 N.E.2d 175, 178 (Ind. Ct. App. 2000) (holding that a conviction for forcibly resisting cannot stand if the officer made an illegal entry into a residence to effect an arrest because a forceful and unlawful entry into the home represents the use of excessive force); *Casselman v. State*, 472 N.E.2d 1310, 1315–17 (Ind. Ct. App. 1985) (holding the general rule did not apply to citizen's resistance to unlawful police entry into home); *Briggs v. State*, 873 N.E.2d 129, 133–34 (Ind. Ct. App. 2007) (holding that even though officers entered the defendant's apartment with his consent, they were not lawfully engaged in the execution of their duties when they detained him without reasonable suspicion). These cases do not allow a citizen to ignore the general rule even when they believe that police are conducting an unlawful search of their person during an investigatory stop. Thus, Officer Thomas's search of the Plaintiff did not have to be lawful for the juvenile hearing officer to find that he forcibly resisted Officer Thomas in violation of Indiana law.

Accordingly, the state court's ruling does not necessarily establish that Officer Thomas lawfully searched the Plaintiff, and the Plaintiff is free to assert that his search of the Plaintiff was not proper.

**B.** *Heck* **Bar**

The rule of *Heck v. Humphrey* is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit. 512 U.S. 477 (1994). To this end, *Heck* bars a plaintiff in a § 1983 action from pursuing a claim for relief that necessarily implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon. 512 U.S. at 487. Conversely, if the civil action, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

The Defendants invoke the *Heck* rule as a bar to the Plaintiff's claim. They begin with the proposition that the only way that the officers' use of force can be considered unreasonable under the circumstances is if the Court finds that the Plaintiff did not resist Officer Thomas. This, they argue, would invalidate the juvenile court's finding that the Plaintiff forcibly resisted Officer Thomas. The Plaintiff argues that the Defendants have not met their burden to prove that the Plaintiff's conviction for resisting law enforcement is incompatible with his claim of excessive force.

"As a general proposition, a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not per se *Heck*-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). To hold otherwise "would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages." *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006). This case is no exception. A finding that Officer Thomas's force

of hitting the Plaintiff on the head was excessive would not "necessarily" implicate or invalidate the Plaintiff's conviction for resisting law enforcement. As the Court stated earlier, the force alleged to be excessive in this case occurred after the events that supported the conviction for resisting law enforcement.

However, *Heck* does limit the Plaintiff's argument regarding the events leading up to the force. Such a limitation is necessary to prevent the Plaintiff from arguing that a successful excessive force claim would not implicate his conviction and at the same time assert facts that are inconsistent with his conviction. *See McCann*, 466 F.3d at 621–22; *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). Therefore, to avoid *Heck's* application, the Court must accept as true the factual finding that formed the basis of the Plaintiff's conviction: the Plaintiff slapped Officer Thomas's hand away when he tried to reach into his pocket. *Cf. Van Gilder*, 435 F.3d at 692 (holding that *Heck* was not a bar to excessive force claim because the plaintiff did not deny that he resisted the officer's order to comply with a blood draw). Any claims to the contrary must be disregarded.

This approach comports with the Seventh Circuit's recent decision in *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008). In *Gilbert*, a prisoner alleged that prison guards used excessive force against him after he hit a guard. A prison disciplinary board had found that the plaintiff struck a guard. In its effort to enforce the rule of *Heck*, the trial judge told the plaintiff that he could not contradict the board's finding. The Plaintiff did not want to admit to conduct that could facilitate a criminal prosecution, but he had trouble presenting his claim without either

17

contesting or accepting the board's finding. In response, the court prevented the plaintiff from presenting evidence about what happened after the events that led to his prison disciplinary board's findings, i.e., after he struck a prison guard. Since this essentially nullified the plaintiff's case, the court granted the defendants judgment as a matter of law. 512 F.3d at 901.

On appeal, the court held that the plaintiff was not required to confess to the offense and should have been allowed to present to the jury evidence about what happened after a guard struck him. *Id.* at 901–02. The court reasoned that *Heck* does "not affect litigation about what happens after the crime is completed" because it does not necessarily imply the invalidity of a conviction, or in Gilbert's position, a disciplinary board sanction. *Id.* The court stated that maintaining an agnostic position toward a conviction does not advance a claim that cannot succeed unless the conviction was invalid. *Id.* The court acknowledged that the plaintiff had difficulty "adhering to an agnostic posture on the question whether he hit a guard," which was the basis of the underlying sanction. *Id.* at 902. The court's suggested remedy was that the trial judge implement *Heck* by instructing the jury that the plaintiff struck the first blow, that any statements to the contrary must be ignored, and that the jury was to determine whether the defendant prison guards used more force than was reasonably necessary to protect themselves from an unruly prisoner. *Id.*

Similarly, in this case the Plaintiff should not be prevented from introducing evidence about what happened after he slapped Officer Thomas's hand away. However, neither should he be allowed to argue that he did not resist in this way. The issue then becomes whether the level of force Officer Thomas used was a reasonable response to the Plaintiff's forcibly resistant act of slapping his hand.

18

C.      **Excessive Force**

The Defendants move for summary judgment on the Plaintiff's excessive force claim. They argue that the amount of force used was not excessive under the circumstances and that even if a constitutional violation occurred, the officers are entitled to qualified immunity. The Plaintiff argues that the blow to the head with a flashlight constitutes deadly force, which was not reasonable under the circumstances, and that no reasonable officer would believe that he could strike someone over the head for backing away.

Section 1983 provides a cause of action against government employees who, acting under color of law in their official capacity, violate the constitutional rights of another. 42 U.S.C. § 1983. A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment's reasonableness standard. *Graham v. O'Connor*, 490 U.S. 386, 395 (1989).

> The Fourth Amendment protects against unreasonable seizures, not seizures that "shock the conscience" or cause "severe injuries." If, under the totality of circumstances, a police officer unreasonably seizes a person by using excessive force, he has violated that person's Fourth Amendment rights. The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold.

*Lester v. City of Chi.*, 830 F.2d 706, 712 (7th Cir. 1987); *see also Graham*, 490 U.S. at 397 ("The reasonableness inquiry is an objective one. The question is whether the officers' action are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Of

course, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Thus, courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Law enforcement officers are entitled to a defense of qualified immunity in actions against them founded upon the United States Constitution or federal law. A police officer will be entitled to immunity when a reasonable police officer could have believed that his conduct was constitutional in light of clearly established law and the information he possessed at the time. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Frazell v. E.K. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996).

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier v. Katz*, 533 U.S. 194, 205 (2001). "The police cannot have the specter of a § 1983 suit hanging over their heads . . . as long as their behavior falls within objectively reasonable limits." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

Under United States Supreme Court precedent, the analysis of a qualified immunity defense requires a two-step inquiry. First, a court must answer the threshold question whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the

officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, assuming that a plaintiff is able to establish a constitutional violation under a favorable view of the facts, "the next, sequential step is to ask whether the right was clearly established." *Id.* In other words, a court must consider whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Id.*

1.      *Officer Thomas*

This is not the typical qualified immunity case where the officer correctly perceives all of the relevant facts but has a mistaken understanding as to whether a particular amount of force is legal in those circumstances. Officer Thomas, who admits that he struck the Plaintiff over the head with his flashlight, does not attempt to argue that this was an appropriate amount of force. Rather, he submits that his blow was intended for the Plaintiff's leg, not his head, and that it was reasonable for him to attempt to subdue the Plaintiff using this method. He argues that the Plaintiff cannot establish that Officer Thomas's intent was not to strike him in the leg. The Plaintiff counters that the Court should not accept the Defendant's claim that he accidentally hit the Plaintiff on the head. [4]

---

[4] Where the injury inflicted by the governmental actor is accidental, an issue is presented regarding whether the injured party has been seized under the Fourth Amendment. This is so because the limits of the Fourth Amendment extend to the intentional conduct of state actors. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (stating that the Fourth Amendment "addressed the misuse of power, not the accidental effects of otherwise lawful government conduct") (citation and quotation marks omitted). As the *Brower* court explained, "if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that tort has occurred, but not a violation of the Fourth Amendment." *Id.* at 597.

This case is distinguishable from the hypothetical presented in *Brower*. Officer Thomas deliberately used his flashlight as a means to strike the plaintiff and restrict his movement. Whether or not he intended to hit him on the head, his use of the flashlight was volitional and the Plaintiff's freedom of movement was terminated. *Brower*, 489 U.S. at 597 (holding that a Fourth Amendment seizure occurs only when there is a governmental termination of freedom of movement "through means intentionally applied") (emphasis omitted); *cf. Campbell v. White*, 916 F.2d 421, 422–23 (7th Cir. 1990) (holding than an officer's action in accidentally running over a fleeing suspect did not constitute a seizure because the officer's action was not the means intentionally applied to effect the stop, but was an

a.      *Violation of Constitutional Rights*

In its consideration of the totality of circumstances, the Court will begin with an analysis

of the *Graham* factors. The first factor is the severity of the Plaintiff's crime. Under the facts

most favorable to the Plaintiff, his crime was unknown, but not believed to be serious. The

officers were responding to a disturbance. The nature of the disturbance is not identified in the

record, and there is no indication that it involved firearms or other weapons. In addition there

was no probable cause to believe the Plaintiff and his friend were involved in the disturbance.

The Officers only stopped the Plaintiff to investigate the disturbance, not to make an arrest. Even

if Officer Thomas heard the rustling of a plastic bag, and believed that the Plaintiff might be

carrying drugs, the officers had no reason to believe that the Plaintiff committed a serious drug

offense.[5] The other crime, resisting an officer, will be addressed more fully during the Court's

discussion of the resistance factor.

Neither did the Plaintiff pose an immediate threat to the safety of the officers or others.

Although the Defendants claim that the Plaintiff refused to remove his hands from his pockets,

the Plaintiff testified in his deposition that he was standing with his hands in the air when the

officers approached him and his friend. The Court must accept this as true for purposes of

summary judgment. Even if he had a concealed weapon, it would not have been easily accessible

to him with his hands in the air. In addition, Officer Thomas did not find anything during his

_____

accident). Thus, Officer Thomas seized the Plaintiff and the issue before the Court is whether a jury could conclude
that the seizure was accomplished in an objectively unreasonable manner.

[5] The Plaintiff submits that it was his friend, not him, who had marijuana in his possession. He also states
that Officer Thomas never patted him down. The combination of these two facts contradicts Officer Thomas's
statement that he heard what could have been a plastic baggie.

search that would lead him to believe that the Plaintiff was armed.

The resistance factor of *Graham* presents the greatest challenge in this case. Consistent with its holding regarding collateral estoppel and *Heck*, the Court must assume that the Plaintiff slapped Officer Thomas's hand away when he tried to reach in his pocket. In this way, the Plaintiff was actively resisting Officer Thomas's efforts to search him. According to the Plaintiff, he believed that Officer Thomas's search was not proper, and he commented on his search technique as he took a couple steps back. According to the Plaintiff's version of events, Officer Thomas reached into his pocket without conducting any kind of pat down. After that, the Plaintiff states only that Officer Thomas grabbed him and he ended up on the ground with a bleeding head wound during a quick chain of events.

According to the officers, after Officer Thomas grabbed the Plaintiff's pocket, he attempted to break free from Officer Thomas and started to slap and hit at Officer Thomas's arm. Officer Thomas ordered the Plaintiff to stop and get on the ground, but the Plaintiff did not comply. Officer Thomas then used his flashlight to administer a stun strike to the Plaintiff's leg. The Plaintiff continued to struggle with Officer Thomas and to strike him with his hands.

The Court is aware that it must credit the Plaintiff's version of the facts and "resist the temptation to evaluate the relative veracity of each party's facts, provided the claims are not implausible on their face." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006) (citing *Payne v. Pauley*, 337 F.3d 767, 770–71 (7th Cir. 2003)). Even so, the designated evidence cited by the Plaintiff only disputes one of the facts presented by the officers regarding the events that transpired after Officer Thomas attempted to search the Plaintiff and grabbed him: the Plaintiff testified in his deposition that he does not recall being struck on the leg. He admits that

an officer may have told him to get down on the ground. Otherwise, his testimony about the events is a professed lack of recollection. The Plaintiff cannot contradict unequivocal testimony about what transpired between the time Officer Thomas grabbed him and he was taken to the ground with his testimony that he does not remember what happened. *Cf. Clark v. Takata Corp.*, 192 F.3d 750, 760 (7th Cir. 1999) (holding that affidavit claiming explicit fact could not be used after deposition testimony that affiant did not recall events). Nothing the Plaintiff stated in his deposition, or elsewhere, undermines the officers' statements that he struck Officer Thomas or makes those statements unworthy of credence. Although the Plaintiff gave a negative response in his deposition when asked whether, "in his opinion," he did "anything to justify being hit on the head" with the flashlight, (Pl. Dep. at 119), this conclusion is not helpful. It does not describe what the Plaintiff did. Moreover, even Officer Thomas does not propose that striking the Plaintiff on the head was a justifiable use of force. Additionally, the Plaintiff's testimony that it was a quick succession of events that led to his injury is not a denial of the events described by the officers, all of which could have happened very quickly.

Thus, the facts support an inference that the Plaintiff objected, and responded with physical resistance, to Officer Thomas's search by slapping his hand, backing away, ignoring orders to get on the ground, and pulling away and using his hands to strike Officer Thomas in the upper body. The Plaintiff does not present his own statements or those of anyone else from which a reasonable jury could decide otherwise.

In light of these factors, the Court must decide whether the governmental interest justified the intrusion on the Plaintiff's rights. The governmental interest changed throughout the encounter. Initially, it was to investigate some type of disturbance in the area. During the

investigation, officer safety was an interest. When the Plaintiff resisted Officer Thomas's search, the confrontation escalated and the governmental interest was in maintaining control over the Plaintiff, who was not complying with Officer Thomas, and arresting him for his resistance. As to the nature and quality of the intrusion, Officer Thomas first reached into his pocket. He then grabbed the Plaintiff forcefully when he backed away. Faced with continued resistance, Officer Thomas ordered the Plaintiff to the ground. When he did not comply the officers directed the Plaintiff to the ground while at the same time attempting to administer a stun strike to his leg with a flashlight. The officers then restrained the Plaintiff with handcuffs.

The facts have not been sufficiently developed for the court to determine whether Officer Thomas's use of a flashlight to control the Plaintiff was a reasonable amount of force judging from the totality of the circumstances. Specifically, the Court does not have sufficient evidence to conclude whether it was reasonable for Officer Thomas to attempt a leg strike at the same time that his partner was taking the Plaintiff to the ground. The probability of not hitting the intended target, the common peroneal area, increased dramatically as soon as Officer Reed physically engaged the Plaintiff. Thus, the lack of evidence regarding whether Officer Thomas could see that Officer Reed was coming to his aid, and whether he should have anticipated what she would do, based on his training or personal experience, are material facts not in evidence. The probability that a strike to someplace other than the leg would cause more serious injuries also increased given that the object being used was a hard flashlight, and not something carrying less potential for serious harm like a knee or fist. There is no evidence in the record regarding when and how the use of a flashlight is appropriate to control unarmed citizens, even if they are resisting officers by pulling away and slapping at them. Neither is the Court aware of the size of

the flashlight used or the manner in which it was held. Although not dispositive on the constitutional issue, a discussion of the continuum of force may have also given direction to the Court.

Moreover, an issue of fact remains regarding whether the Plaintiff failed to keep his hands in the air and out of his pockets as directed by the officers as they approached. His failure to do so would have been a factor in the totality of circumstances facing the officers. Also, whether Officer Thomas reached into the Plaintiff's pocket instead of doing a pat down search is disputed. If he went straight for the pocket, the Plaintiff's response could be interpreted as surprise that Officer Thomas searched in that manner, rather than as an attempt to flee or resist further police action. Such a response would implicate a different governmental interest. Additionally, if Officer Thomas did not pat down the outside, hear the sound of a plastic baggie, and hear the Plaintiff exclaim "oh no," his stated reason for the Plaintiff backing away is in dispute. Without this fact, the officer's act of grabbing the Plaintiff's pocket are also put in a different light. The facts most favorable to Officer Thomas are that he grabbed the pocket because he suspected it contained contraband and the Plaintiff was trying to get away. However, the facts most favorable to the Plaintiff are that the officer grabbed him for backing away in surprise.

Enough of the circumstances surrounding the confrontation between Officer Thomas and the Plaintiff are unknown or in dispute that a reasonable jury could return a verdict for the Plaintiff. But even if Officer Thomas engaged in conduct that violates the constitution he will be entitled to qualified immunity if, in doing so, he did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

b.      *Violation of a Clearly Established Right*

> To be clearly established, the right in question must be sufficiently clear that a reasonable official
> right. This is not to say that an official action is protected by qualified immunity unless the very
> action in question has previously been held unlawful; but it is to say that in the light of
> pre-existing law the unlawfulness must be apparent.

*Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S.

635, 640 (1987)). This inquiry "must be undertaken in light of the specific context of the case,

not as a broad general proposition." *Saucier*, 533 U.S. at 201. "For a right to be clearly

established, however, we need not have a prior case that is founded on materially similar facts;

officials may still be on notice in 'novel factual circumstances.'" *Miller v. Jones*, 444 F.3d 929,

934 (7th Cir.  2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *McDonald v. Haskins*,

966 F.2d 292, 295 (7th Cir. 1992) ("It would create perverse incentives indeed if a qualified

immunity defense could succeed against those types of claims that have not previously arisen

because the behavior alleged is so egregious that no like case is on the books."); *see also Siebert*

*v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001) (identifying two routes for proving that a right

is clearly established: (1) the violation is so obvious that a reasonable officer would know that

what he was doing violates the Constitution, or (2) a closely analogous case establishes that the

conduct is unconstitutional). The ultimate inquiry is whether the state of the law in April 2005

gave the Defendant fair warning that his treatment of the Plaintiff was unconstitutional. *Hope*,

536 U.S. at 741.

The Plaintiff does not cite any case that is closely analogous to this one; most cases

involving excessive force involve a passive, non-resistant individual, or one who is already

secured by handcuffs or other means. *See, e.g., Sallenger v. Oaks*, 473 F.3d 731, 742 (7th Cir.

2007) (holding that "a reasonable officer would have known that administering closed-fist

punches and flashlight blows, including ones to the head, after the arrestee was handcuffed, continuing to strike him after he had stopped resisting arrest and failing to place him in the proper position after hobbling him violated the individual's Fourth Amendment right to be free from excessive force"); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (stating that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without provocation whatsoever"). Here, the Plaintiff was neither handcuffed nor passive. The Plaintiff's focus on cases involving "gratuitous strikes" to a suspect also do not apply to this case, which involves a misplaced strike that was precipitated by some level of physical resistance. Because he has not presented an analogous case, the Plaintiff must proceed under the second route for proving that a right is clearly established.

"Establishing that the use of force in a particular case was 'so plainly excessive' requires a fair amount of factual development." *Chelios v. Heavener*, — F.3d —, No. 06-4125, 2008 WL 746842, * 10 (7th Cir.  March 21, 2008). Therefore, "if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made." *Clash*, 77 F.3d at 1048. There are various facts bearing on the objective reasonableness of Officer Thomas's use of the flashlight that remain disputed or undeveloped. In such a case, the Seventh Circuit supports denial of the qualified immunity defense until after a trial. *See Chelios*, 2008 WL 746842 at *10.

The Court withholds ruling whether Officer Thomas could have reasonably believed that the force he used did not violate the Fourth Amendment, and denies summary judgment for Officer Thomas on the Plaintiff's excessive force claim.

**B.      Officer Reed**

The Plaintiff argues that Officer Reed is liable as a bystander to Officer Thomas's

actions. To recover damages under § 1983, a plaintiff must establish that a defendant was

personally responsible for the deprivation of a constitutional right, *see Gentry v. Duckworth*, 65

F.3d 555, 561 (7th Cir. 1995), or that the defendant stood idly by when he could have prevented

the deprivation of that constitutional right, *see Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.

2000). Thus, in § 1983 excessive force claims, individual officers have a duty not only to refrain

from using unreasonable force but to intervene to prevent other law enforcement officers from

infringing the constitutional rights of citizens. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)

(citing *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)). An officer, who had "a realistic

opportunity to step forward and prevent a fellow officer from violating the plaintiff's rights

through excessive force but failed to do so," may be held liable. *Miller*, 220 F.3d at 495. "[A]

'realistic opportunity to intervene' may exist whenever an officer could have 'called for a

backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" *Abdullahi*

*v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282 (7th

Cir. 1994)).

The record does not support an inference that Officer Reed could have cautioned Officer

Thomas to stop before he administered the flashlight blow, and the Plaintiff does not argue

otherwise. In his response brief, the Plaintiff presents a single sentence on the law regarding

bystander liability and concludes, without any analysis, that Officer Reed is liable for failing to

intervene. But it is undisputed that Officer Reed was focused on the other individual that was

with the Plaintiff when Officer Thomas reached into his pocket. In the Plaintiff's own words, the

time between Officer Thomas reaching in his pocket and the Plaintiff being taken to the ground

was a "quick chain of events" and "went real fast." (Pl. Dep. at 75.) Although the Plaintiff does

not remember how he got to the ground (Pl. Dep. at 78), Officer Reed testified by affidavit that

she directed the Plaintiff to the ground, (Reed Aff. ¶ 12). No reasonable jury could conclude that

while Officer Reed was directing the Plaintiff to the ground during a quick chain of events that

she had time, i.e. a "realistic opportunity," to assess whether Officer Thomas was going to strike

the Plaintiff and to intervene. Officer Reed is entitled to judgment as a matter of law.


3.      ***City of Fort Wayne***

a.      *Section 1983 Municipal Liability Claim*

        In his Amended Complaint, the Plaintiff alleges that the police officers acted pursuant to

the policies, procedures, practices, customs, and training of the Fort Wayne Police Department.

The City argues that it is entitled to summary judgment because there is no evidence that the

alleged misconduct was undertaken pursuant to an unconstitutional policy, procedure, or practice

of the Fort Wayne Police Department, or a failure to train or supervise its officers.

        Municipal liability under § 1983 derives from *Monell v. Department of Social Services*.,

436 U.S. 658 (1978), in which the Supreme Court ruled that local governments may be held

liable where "the action that is alleged to be unconstitutional implements or executes a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

officers." *Id.* at 690. *Monell* also held that local governments can be sued "for constitutional

deprivations visited pursuant to governmental 'custom' even though such a custom has not

received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. A

plaintiff attempting to hold a municipality liable under § 1983 must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

> " Policy" or "custom" can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

*Garrison v. Burke*, 165 F.3d 565, 571–72 (7th Cir. 1999).

The Plaintiff does not identify a municipal policy, attempt to argue that the City maintains a widespread practice regarding his claim of excessive force, or state that his injuries were caused by a person with final policymaking authority. Indeed, the Plaintiff does not so much as mention his claims against the City in response to the motion for summary judgment. Thus, the Plaintiff is left with only the bare allegations of his Complaint. But "the facts alleged in [the] complaint have little relevance at the summary judgment stage." *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1265 (7th Cir. 1990) (noting that facts in complaint cannot create disputed issues of material fact because the plaintiff "must go a step further and make a specific, supportable showing to defeat a motion for summary judgment"). The City is entitled to summary judgment on the Plaintiff's § 1983 claim.


b.       *State Claim—Respondeat Superior*

The City asserts statutory immunity in support of its motion for summary judgment on the Plaintiff's supplemental state law battery claim. The Plaintiff does not respond.

Governmental entities are subject to liability for the torts committed by their employees

unless one of the exceptions in the ITCA applies. *Lake County Juvenile Ct. v. Swanson*, 671
N.E.2d 429, 439 (Ind. Ct. App. 1996). The basis for the City's claim of immunity arises from
section 34-13-3-3(8) of the ITCA. This section provides immunity to "a government entity or an
employee acting within the scope of the employee's employment" from liability for losses
resulting from the "enforcement of . . . a law . . . unless the act of enforcement constitutes false
arrest or false imprisonment." I.C. § 34-13-3-3(8). Here, there is no dispute that Officer Thomas
was the City's employee acting within the scope of his employment at the time of the arrest. The
Plaintiff has not alleged false arrest or false imprisonment. Nor is there any dispute that Officer
Thomas was enforcing a law when he stopped the Plaintiff, searched him, and restrained him.

The City does not address whether section 34-13-3-3(8) immunizes a police officer's
actions even when they amount to excessive force. In *City of Anderson v. Davis*, 743 N.E.2d
359, 365 (Ind. Ct. App. 2001), the Indiana Court of Appeals recognized that "[i]t is unclear if a
police officer enforcing the law in the scope of his employment would be exempt from immunity
under the ITCA if his actions amounted to excessive force, or were illegal in some other way."
As recently as January 2008, an appellate court in Indiana stated in a footnote that, because
Indiana Code § 35-41-3-3 "creates a statutory duty to use reasonable force in arresting a person,
officers are not immune from such a claim under ITCA." *N.J. ex rel. Jackson v. Metro. Sch. Dist.
of Washington Twp.*  879 N.E.2d 1192, 1197 n.2 (Ind. Ct. App. 2008) (citing holding from
*Patrick v. Miresso*, 848 N.E.2d 1083 (Ind. 2006), that an officer's negligent driving was not
within the ITCA "enforcement of a law" immunity because there was a statutory duty to operate
emergency vehicles "with due regard for the safety of all persons").

In considering questions of state law, this Court must determine the issues as it believes

the Indiana Supreme Court would. The parties have not presented the Court with adequate

guidance on this issue, which remains unresolved even in the state courts. Because the Court is

not prepared to rule that police officers who use unreasonable force during an arrest are immune

from liability under the ITCA, the Court denies summary judgment for the City on this claim.


**CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment [DE 30] is

GRANTED IN PART and DENIED IN PART. Defendant Reed is dismissed from the suit, and

the federal claim against the City of Fort Wayne is dismissed. The case remains pending as to

Defendant Thomas.

The Defendants' Motion to Strike [DE 44] is DENIED AS MOOT.

SO ORDERED on May 2, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
